[Cite as *State v. Covic*, 2012-Ohio-3633.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 11CA0055-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KELLY L. COVIC | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 10-CR-0161 |

DECISION AND JOURNAL ENTRY

Dated: August 13, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Two middle school students in Brunswick accused their teacher, Kelly Covic, of inviting them to her house to play poker, drink alcohol, and engage in sexual conduct with her. A jury convicted her of one count of sexual battery and one count of contributing to the delinquency of a minor. Ms. Covic has appealed. This Court affirms because her convictions are supported by sufficient evidence, are not against the manifest weight of the evidence, and the State's failure to provide additional details regarding the dates and times of the alleged conduct did not prejudice Ms. Covic's ability to defend herself.

BACKGROUND

{¶2} Ms. Covic was indicted for three counts of sexual battery, two counts of endangering children, and one count of contributing to the delinquency of a minor. The sexual battery and contributing to the delinquency charges stemmed from allegations that Ms. Covic

invited groups of students to her house to drink alcohol and play poker late at night when her husband was not home. Two male students, J.H. and K.C., testified that, when they went to her house, Ms. Covic gave them alcohol and engaged in sexual conduct with them. The child endangering charges stemmed from allegations that Ms. Covic left her own young daughters home alone at night while she drove the students back to their homes.

{¶3} During the 2008-2009 school year, Ms. Covic was teaching a special program for at-risk kids at Edwards Middle School in Brunswick. She obtained permission from the principal to give out her personal cell phone number to her students so that she could stay in touch by text messaging regarding homework assignments and truancy issues. In August 2009, Ms. Covic received a series of text messages from J.H., a male student who had graduated from Edwards Middle School that spring.

{¶4} Via text message, J.H. demanded that Ms. Covic "leave 4000 dollars at hunington school in the next hour" or he would tell police that she had raped him. Over the next hour, J.H. repeatedly texted Ms. Covic similar threats about her going to prison if she did not give him the money he demanded. Ms. Covic testified that she called a neighbor who works as a police officer for advice on how to handle the situation. The police officer testified that he told her to photograph the text messages, file a report with her local police department, and contact her principal.

{¶5} Ms. Covic testified that she contacted her union representative the next morning regarding the texts from J.H. According to Ms. Covic, she followed the representative's recommendation to leave the matter alone unless and until a formal complaint was filed against her. The police officer Ms. Covic told about the text messages also testified that Ms. Covic later

told him that J.H. had sent her a message via computer the next day apologizing for his texts as he had been "f'd up" the previous night.

{¶6} A couple of weeks later, the principal of Edwards Middle School, Kent Morgan, asked Ms. Covic to meet with him to discuss allegations that she had engaged in an inappropriate relationship with a student. Mr. Morgan testified that a teacher told him in early August 2009 that Ms. Covic had received a series of texts from J.H. and had consulted the teachers' union and police about them. Shortly thereafter, another teacher told Mr. Morgan that she had heard about something happening with Ms. Covic at an overnight party attended by several Edwards Middle School teachers at Catawba that summer. Mr. Morgan interviewed the other teachers who were at the party at Catawba and learned that Ms. Covic had admitted to them that she had done "something very wrong, or very inappropriate" with a student. When Mr. Morgan confronted Ms. Covic with that information, she told him that she had damaged her relationship with K.C., a former student, by going on a date with K.C.'s older brother despite the fact that she was married. Mr. Morgan interviewed various students, including K.C. and J.H., and later called the police.

{¶7} Lori Wagner, a teacher at Edwards Middle School, testified that she had been driving home with Ms. Covic from a party in early July 2009 when Ms. Covic began crying, asked her not to think less of her, and told her that she had done something horrible. According to Ms. Wagner, Ms. Covic said, "I did it with [K.C.]." They stopped at a bar to talk about it, and while there, Ms. Covic spent time on the phone texting and talking to K.C. about the fact that she had told Ms. Wagner that they had had sex. Ms. Wagner testified that Ms. Covic told her that K.C. was angry with her for telling Ms. Wagner. She said that Ms. Covic was crying and saying that "it felt . . . like a high school breakup." Ms. Wagner also testified that Ms. Covic told her

that, if someone ever questioned her about her relationship with K.C., she would say "that this all happened with [K.C.]'s brother."

{¶8} Ms. Wagner further testified that, two weeks after that conversation with Ms. Covic, she and Ms. Covic went to Ms. Wagner's trailer at Catawba for a girls' night out with two other teachers from Edwards Middle School. She testified that she shared a couple of bottles of wine with Ms. Covic that evening and she does not remember details of the conversation. She recalled only that Ms. Covic mentioned K.C.'s name while the group was sitting together at the table.

{¶9} At trial, Ms. Young testified that she was among the teachers present at the party at Catawba when Ms. Covic tearfully admitted to doing "something very inappropriate." According to her, Ms. Covic said, "I've slept with someone." After hearing that, Ms. Young said that she was confused and "was kind of blacking out, like trying to figure it out myself." Then she heard Ms. Dooling ask Ms. Covic if she was planning to tell her husband about it and Ms. Covic said, "No, I'm not going to tell Sonny. I would lose everything." Ms. Young explained that she did not understand what was going on, she did not know the other teachers well, and she quickly left the table and went to bed.

{¶10} Janet Dooling identified herself as a close friend of Ms. Covic and her fellow teacher at Edwards Middle School. She testified that she was present at the party at Catawba. She said that everyone was drinking wine and margaritas and playing games when Ms. Covic looked tearfully at Ms. Wagner and said, "I think I should tell them." According to Ms. Dooling, Ms. Covic told the group that she had "done something very inappropriate and please don't think less of her." Ms. Dooling testified that she "went blank" after that and she stopped processing what Ms. Covic was saying. She said that, although she had hoped that she had misunderstood, a

few minutes after they had left the table, Ms. Covic approached her and "told me that it didn't work that well because he was so well-endowed, and she named [K.C.]."

{¶11} K.C. testified that he went to Ms. Covic's house at least 30 times from May to August 2009. He said that he always took a friend with him to play poker and drink alcohol and that they would often stay at the Covic house all night. He also said that Ms. Covic had sex with him during his second visit to her house. J.H. testified that Ms. Covic invited him to her house to drink alcohol and play poker with his friends. He described four trips to her house and said that they engaged in sexual conduct on two of those occasions. He said that he always went to her house with one or more friends including J.S., T.S., and T.H. He also testified that he sent the text messages asking Ms. Covic for money just "for fun" because he wanted some money and thought she might give it to him.

{¶12} Three other former students testified that they went with J.H. to Ms. Covic's house to drink alcohol and play poker. They said they saw J.H. drink alcohol that Ms. Covic had supplied. One of the boys, T.S., said that he once saw Ms. Covic kissing J.H. in the garage. Another former student, T.H., testified that he went to Ms. Covic's house once with J.H. and maybe 50 times with K.C. He said they would all play poker and drink alcohol on each occasion. He explained that, during one visit to Ms. Covic's house with K.C., Ms. Covic and K.C. spent the night alone upstairs.

{¶13} Ms. Covic testified that she never had sex with any of her students, she never gave any students alcohol, and neither K.C. nor J.H. had ever been inside her house. The jury acquitted her of child endangering and sexual battery in relation to J.H., but convicted her of contributing to the delinquency of J.H. and sexual battery of K.C. The trial court sentenced her

to serve three years in prison for sexual battery and a concurrent six months for contributing to the delinquency of a minor. Ms. Covic has appealed.

SUFFICIENCY

{¶14} Ms. Covic's first assignment of error is that her convictions are not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Ms. Covic's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶15} Ms. Covic has argued that there was insufficient evidence to support her convictions because there was no evidence that either J.H. or K.C. had ever been to her home, that she had ever given any student alcohol, or that she had engaged in sexual conduct with any student. Ms. Covic has argued that "there was no credible evidence" to support the convictions and that the evidence presented was "disparate, impossible, confusing, and unbelievable."

{¶16} Under Section 2907.03(A)(7) of the Ohio Revised Code, "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when . . . [t]he offender is a teacher . . . employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the other person is enrolled in or attends that school, and the offender is not enrolled in and does not attend that school." Under Section 2919.24(A)(1) of the Ohio Revised Code, "[n]o person . . . shall . . . [a]id, abet, induce, cause, encourage, or contribute to a child . . . becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in

section 2152.02 of the Revised Code." Ms. Covic has acknowledged that her convictions were based on the first-hand accounts of J.H. and K.C. and the testimony of several fellow teachers who testified that Ms. Covic tearfully admitted doing something inappropriate with K.C. She has argued, however, that the State did not meet its burden of proof because the testimony was not credible. Therefore, Ms. Covic's argument challenges the manifest weight rather than the sufficiency of the evidence.

{¶17} J.H. testified that, when he was a 14-year-old student of Ms. Covic, she took him to her house, gave him beer, and had sex with him. He testified that this happened several times near the end of his eighth-grade school year in May and June of 2009. K.C. testified that Ms. Covic was his teacher in eighth grade and she first invited him over to her house near the end of that school year in May 2009. According to K.C., he and a friend went to her house many times over the course of four months to drink alcohol and play poker. He said that, during his second visit to her house, Ms. Covic had sex with him. Even without the testimony of Ms. Covic's friends and the other students, the testimony of J.H. and K.C., if believed, could have convinced the average finder of fact of Ms. Covic's guilt beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Ms. Covic's first assignment of error is overruled.

## MANIFEST WEIGHT

{¶18} Ms. Covic's second assignment of error is that her convictions are against the manifest weight of the evidence. If a defendant argues that her convictions are against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

{¶19} Ms. Covic has argued that J.H. and K.C. are not credible because they are both juvenile delinquents and admitted liars. Both boys were placed in Ms. Covic's special class because they were deemed at-risk youth due to problems at home and/or school that required additional support. The evidence indicated that both boys had been on probation at different times. J.H. testified that he had sent Ms. Covic a series of threatening text messages in August 2009 in an attempt to get her to give him thousands of dollars. K.C. admitted to lying to Ms. Covic to persuade her to give him $200 in the spring of 2010 to pay probation fees that his mother had paid for him. Both boys admitted to having lied to the school principal and/or other authorities, even police officers, when the allegations were first brought to light through teachers at the school.

{¶20} K.C. testified that after initially lying to the Grand Jury, he later told it the truth about Ms. Covic giving him alcohol as well as the sexual encounter he had with her. He said that he denied all the allegations initially because he did not want to get her in trouble, but he felt he had to tell the truth later because it was the right thing to do. He also testified that Ms. Covic had texted him after she told Ms. Wagner about their sexual encounter. He said that he was angry that Ms. Covic had told someone else about that because she had told him more than once that he should never tell anyone. When cross-examined about his testimony that he had gone to Ms. Covic's house at least 30 times in 4 months, he said that he went to her house approximately "every third day" from May to August 2009.

{¶21} Ms. Covic has also argued that her fellow teachers' testimony about her alleged confessions was not credible and made no sense, especially in light of comments regarding them

drinking alcohol at the party, going "blank," and "blacking out." According to her fellow teachers, Ms. Covic's confession at the Catawba party was vague. Ms. Dooling testified, however, that after leaving the table, Ms. Covic approached her and made a comment that clarified that she had had sexual intercourse with K.C. Ms. Dooling also testified that, just before Ms. Covic's confession at the table, Ms. Covic had said to Ms. Wagner, "I think I should tell them." That seems to corroborate Ms. Wagner's testimony that Ms. Covic had previously admitted to her that she had a sexual relationship with K.C.

{¶22} K.C.'s testimony about going to Ms. Covic's house every third day corresponds to Ms. Covic's testimony that her husband worked 24-hour shifts as a fireman, leaving him off for 48 hours in between. Ms. Wagner's testimony corroborated K.C.'s testimony about Ms. Covic texting him after she told Ms. Wagner that they had had sex. Both Ms. Wagner and K.C. testified that K.C. was angry with Ms. Covic for telling someone about the incident. Ms. Wagner's testimony about Ms. Covic's confessions also corroborated K.C.'s testimony about having had sex with Ms. Covic. Ms. Wagner testified that she was sober when Ms. Covic first raised the topic of K.C. and she offered details about Ms. Covic's emotional attachment to K.C., including a comment that it felt like a high school breakup. The jury did not lose its way when it convicted Ms. Covic of the sexual battery of K.C.

{¶23} The jury acquitted Ms. Covic of sexual battery in relation to J.H., but convicted her of contributing to his delinquency. In light of his admitted attempt to force Ms. Covic to pay him thousands of dollars to prevent him from accusing her of raping him, the jury may have reasonably believed that Ms. Covic had hosted alcohol parties with J.H. and his friends at her house, but disbelieved his testimony relating to the sexual battery charge. Unlike the situation involving K.C., none of Ms. Covic's colleagues testified that she had admitted to doing anything

sexual with J.H.  We have reviewed the evidence and conclude that the jury did not lose its way when it convicted Ms. Covic of contributing to the delinquency of J.H.  Ms. Covic's second assignment of error is overruled.

### BILL OF PARTICULARS

{¶24}  Ms. Covic's third assignment of error is that she was prejudiced by the lack of specific dates in the bill of particulars and discovery responses provided by the State.  She has argued that she was prevented from asserting an alibi defense at trial because the State failed to give her more specific information about the dates the illegal conduct allegedly occurred.  Under Rule 7(E) of the Ohio Rules of Criminal Procedure, upon timely written request or court order, the State "shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and of the conduct of the defendant alleged to constitute the offense.  A bill of particulars may be amended at any time subject to such conditions as justice requires."

{¶25}  In the indictment, the State charged that the conduct constituting each offense occurred "on or about the 1st day of May through the 30th day of June, 2009."  In June 2010, Ms. Covic moved for discovery and moved the trial court to order the State to produce a bill of particulars including the dates and times of the conduct alleged to constitute the offenses.  On July 8, 2010, the State provided a response to the discovery demand and a bill of particulars, but did not include any further information about the dates and times of the alleged conduct.

{¶26}  On July 20, Ms. Covic moved the trial court for a "Meaningful Bill of Particulars," alleging that she "believes that she has a valid alibi defense."  She requested, among other things, information about the precise date and time at which she had allegedly contributed to J.H.'s unruliness and engaged in sexual conduct with K.C.  Following an August 13 hearing, the trial court delayed ruling on the motion for a meaningful bill of particulars until Ms. Covic

moved for discovery under the newly revised Rule 16 of the Ohio Rules of Criminal Procedure. On August 16, 2010, Ms. Covic filed a supplemental discovery demand under the new version of Rule 16.

{¶27} There is no indication in the record that the trial court ever explicitly ruled on the July 20 motion for a "Meaningful Bill of Particulars" or that Ms. Covic ever moved the court to do so after complying with the trial court's August 13 order. There is no indication in the record that Ms. Covic followed up on her request for additional details about the timing of the alleged conduct in the six months between the August 13, 2010, hearing and the February 2011 trial.

{¶28} "In cases of child sexual abuse, young victims often are unable to remember exact dates when the offenses occurred." *State v. Carey*, 2d Dist. No. 2002-CA-70, 2003-Ohio-2684, ¶ 8. The precise date of the offense of sexual battery is not an element of the crime. *See* R.C. 2907.03. Therefore, "a degree of inexactitude in averring the date of the offense is not necessarily fatal to a prosecution." *Carey*, 2003-Ohio-2684, at ¶ 8 (citing *State v. Sellards*, 17 Ohio St. 3d 169, 171 (1985)). Although a specific date and time is ordinarily not required in a bill of particulars, if the State possesses such information, it must supply it in a bill of particulars or in response to a discovery request. *Sellards*, 17 Ohio St. 3d at 171. Even if the State has no more detailed information about specific dates and times, the lack of detail "may also prove fatal to prosecution . . . if the absence of specifics truly prejudices the accused's ability to fairly defend [her]self." *Id.* at 172. In any event, if "the inability to produce a specific time or date when the criminal conduct occurred is . . . without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence." *State v. Gingell*, 7 Ohio App. 3d 364, 368 (1st Dist. 1982).

{¶29} In this case, Ms. Covic has argued that the State must have had additional details about the dates because, at trial, its witnesses provided new details about the timing of the alleged offenses. Ms. Covic has supported this argument with two examples of the details offered at trial. First, T.S. testified that he saw J.H. drink alcohol that Ms. Covic had supplied when he went with J.H. to Ms. Covic's house on a Friday. Second, J.S. and T.H. testified that they watched the Cleveland Cavaliers play basketball on television during one or more of their visits to Ms. Covic's house. In particular, J.S. testified that, on one occasion, he watched a Cavaliers' game while J.H. drank alcohol supplied by Ms. Covic. T.H. testified that he went to Ms. Covic's house about 50 times, mostly with K.C., but one time with J.H. He said that, when they went to Ms. Covic's house, "[w]e'd hang out and watch the Cavs games or play poker." Although he testified that he saw J.H. drink alcohol supplied by Ms. Covic and had spent the night at her house while K.C. stayed upstairs alone with her, he did not testify that either of those things happened on the same night as a Cavaliers basketball game. Thus, Ms. Covic's argument is necessarily limited to the timing of the alleged conduct supporting the charge of contributing to the delinquency of a minor.

{¶30} Ms. Covic has argued that, had the State provided more specific information before trial, the dates could have been narrowed from a two-month window to the dates that the Cavaliers played in May and June 2009. Although she has argued that the State "deliberately" failed to disclose the information about the Cavaliers' game, she has not pointed to anything in the record to support that allegation. The record supports the implication that the State was not aware of any additional details regarding the dates of the conduct supporting the charges.

{¶31} Regardless of whether the State had additional details before trial, this Court must consider whether the lack of detail was materially detrimental to Ms. Covic's ability to defend

herself. *State v. Sellards*, 17 Ohio St. 3d 169, 172 (1985). Although Ms. Covic has suggested that with specific dates she may have been able to present an alibi defense, "[s]he neither attempted to assert an alibi defense at trial nor filed a notice of alibi. In other words, [Ms. Covic] did not attempt to show at trial that [s]he was indisputably elsewhere during at least part of the time when the offense allegedly occurred. Instead, [s]he simply claimed that the incident[s] never happened[.]" *State v. Carey*, 2d Dist. No. 2002-CA-70, 2003-Ohio-2684, ¶ 10; *see also State v. Lawrinson*, 49 Ohio St. 3d 238, 239 (1990) (affirming grant of new trial when State withheld information limiting gross sexual imposition of a minor from one month to one week and defendant stood "ready to submit affidavits and other evidence from his employers supporting the assertion that he can account for much of his time during the week in question."). Ms. Covic also failed to show that the specific dates were in any other way critical to her defense. *See State v. Gingell*, 7 Ohio App. 3d 364, 368 (1st Dist. 1982) (offering hypothetical example of situation where child-victim's age is an element of the offense).

{¶32} Further, the trial testimony that Ms. Covic has highlighted was not sufficiently focused to have supported an alibi defense. None of the witnesses testified to a specific date that the alleged conduct occurred. Even if Ms. Covic could have presented evidence that she was indisputably elsewhere during every Cavaliers' game during the two-month indictment period, it would not have exculpated her. Although J.S. testified that the Cavaliers were playing a basketball game while Ms. Covic served J.H. alcohol, other witnesses, including J.H. and T.S., testified that on one or more occasions, when J.S. was not present, Ms. Covic served J.H. alcohol.

{¶33} The record does not indicate that the State had details about the dates of the alleged conduct that it refused to provide to the defense via a bill of particulars or discovery prior

to trial. The record also fails to support Ms. Covic's argument that she was materially prejudiced by the State's failure to provide more specific information regarding the dates of the alleged conduct. Therefore, her third assignment of error is overruled.

## CONCLUSION

{¶34} Ms. Covic's first and second assignments of error are overruled because her convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Her third assignment of error is overruled because there is no evidence that the State had specific information regarding the dates of the offenses that it failed to provide to the defense before trial and Ms. Covic has not shown that the State's failure to provide more specific information regarding the timing of the offenses materially prejudiced her ability to defend herself. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I concur in the judgment of the majority. With respect to Ms. Covic's third assignment of error, I agree that it is properly overruled.

{¶36} In *State v. Lawrinson,* 49 Ohio St.3d 238 (1990), the Supreme Court held that:

> A trial court must consider two questions when a defendant requests specific dates, times or places on a bill of particulars: whether the state possesses the specific information requested by the accused, and whether this information is material to the defendant's ability to prepare and present a defense. If these two questions are answered in the affirmative, then the state must include the information in the bill of particulars.

(Internal citations omitted.) *Id.* at 239.

{¶37} In the instant matter, Ms. Covic does not point to any portion of the record that indicates that the State possessed the information at issue. Further, Ms. Covic has not shown that her ability to prepare and present a defense was materially affected by the lack of information. However, because the main opinion *could* be read to suggest that Ms. Covic's failure to file a notice of alibi or failure to present evidence of the same is, in and of itself, fatal to her argument that the lack of information was material to her ability to prepare and present a defense, I write separately to make clear that I do not believe that to be the case. Instead, I would consider it as

part of the totality of the circumstances in determining whether Ms. Covic's defense was materially prejudiced by the lack of information. *See State v. Sellards*, 17 Ohio St.3d 169, 172 (1985). *Lawrinson* itself evidences that the failure to present an alibi defense is not fatal to demonstrating reversible error. *Lawrinson* at 239; *State v. Lawrinson*, 11th Dist. No. 12-177, 1988 WL 94380, *1 (Sept. 9, 1988). In *Lawrinson,* the Supreme Court upheld the grant of a new trial where the State withheld information that "substantially narrowed the time from that originally contained in the indictment[,]" *Lawrinson,* 49 Ohio St.3d at 239, even where "the alibi was not part of [the defendant's] defense[.]" *Lawrinson*, 1998 WL 94380, *1. Thus, in light of *Lawrinson,* it is my opinion that the language in *Sellards* discussing the failure to file a notice of alibi, sets out a point to consider, rather than a strict rule of law. *Sellards,* 17 Ohio St.3d at 172.

{¶38} Nonetheless, in light of the facts before us, I agree that Ms. Covic's argument is properly overruled.

APPEARANCES:

RICHARD G. LILLIE and GRETCHEN A. HOLDERMAN, Attorneys at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MICHAEL P. MCNAMARA, Assistant Prosecuting Attorney, for Appellee.