[Cite as *State v. Sauto*, 2013-Ohio-1320.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26404 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| KIMBERLY SAUTO | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 11 10 2803 |

DECISION AND JOURNAL ENTRY

Dated: April 3, 2013

HENSAL, Judge.

{¶1} Kimberly Sauto appeals her conviction in the Summit County Common Pleas Court for unlawful sexual conduct with a minor. For the following reasons, this Court affirms.

I.

{¶2} J.C. began taking lessons at a dance studio in Northfield, Ohio, when he was only a few years old. He was talented at tap and continued taking lessons into his teen years. At some point, the studio hired Ms. Sauto, who became his teacher. Because of his ability and passion for dance, when J.C. was 15, Ms. Sauto inquired whether he could help her teach some of the studio's younger students. The studio and J.C.'s parents agreed to let him become her assistant.

{¶3} In addition to teaching at the studio, one of Ms. Sauto's responsibilities was to provide instruction at various dance workshops around the country. Because he was her assistant, in the summer of 2011, the studio and J.C.'s parents allowed J.C. to attend some of the

workshops with her.  According to J.C.'s mother, when she learned that her son was going to be travelling with Ms. Sauto for work, she made an effort to get to know Ms. Sauto better.  Through their interactions, she came to trust Ms. Sauto with her son.

{¶4}  The first workshop that Ms. Sauto and J.C. attended was in Louisiana.  According to Ms. Sauto, although she and J.C. had to share a hotel room, there were two beds in the room.  A couple of months later, they attempted to go to a workshop in Canada.  When they got to the border, however, they learned that they needed work visas.  They stayed in New York for a couple of days while they waited to see if the studio could get them visas, then drove to Ms. Sauto's parent's house in West Virginia, where Ms. Sauto had left her children while she was going to be out of the country.  J.C. testified that he could not remember much about what happened during the evenings they spent together in West Virginia because he drank wine each night until he blacked out.  They returned to Ohio on Sunday, August 14.

{¶5}  According to J.C., after they returned from West Virginia, Ms. Sauto and he began exchanging text messages that were straight out of a teenage love affair.  On the following Friday, August 19, he had a solo lesson at the dance studio with her that went until around 11:00 p.m.  After it was over, Ms. Sauto offered to drive him home.  Although she had taken him home before, this time she did not go straight to his house.  J.C. testified that she pulled the car off into a residential neighborhood, stopped, then offered to perform oral sex on him.  After he ejaculated in her mouth, he helped her remove her clothes.  According to J.C., Ms. Sauto climbed over the center console and they had sex in the front seat until he ejaculated again.

{¶6}  J.C. testified that, after their sexual encounter, they continued exchanging text messages and love letters.  It continued until September 3, when he was rehearsing with Ms. Sauto and his duet partner.  During the rehearsal, Ms. Sauto received a call on her cellphone.

When the call ended, she told J.C. that they had been caught and ended the rehearsal. J.C. testified that, although he and Ms. Sauto stopped talking directly, they continued passing messages to each other through his duet partner.

{¶7} The State submitted three sets of messages that Ms. Sauto had written to J.C. According to law enforcement officers, Ms. Sauto's husband brought them a set of letters that he had found at their home. He also forwarded them some text messages that his wife had allegedly sent to J.C. The duet partner also brought them a package that Ms. Sauto had asked her to deliver to J.C. According to the duet partner, although she intended to deliver the package to J.C., it came open while it was in her possession and so she started reading the enclosed letter. When she realized what was going on between J.C. and Ms. Sauto, she decided that she did not want to be involved in passing any more messages between them. She, therefore, gave the package to a prosecutor instead.

{¶8} Ms. Sauto admitted that her relationship with J.C. was more than simply teacher and student. She said that, although it started out that way, they began spending a lot of time together dancing and socializing. She was having marital problems because her husband is a drug user and she ended up developing a crush on J.C. because it felt good to have someone appreciate her. She testified that over time she fell in love with J.C. and that he reciprocated her affections. While she admitted that they had kissed, she denied that they rehearsed together on August 19 or that they had sex afterward in her car. She also denied that she gave him any alcohol while they were at her parents' house in West Virginia.

{¶9} The Grand Jury indicted Ms. Sauto for unlawful sexual conduct with a minor under Section 2907.04 of the Ohio Revised Code. The indictment initially alleged that the crime occurred "on or about the 1st day of August, 2011." Four days before trial, however, the State

moved to amend the indictment to change the date to "on or about August 15, 2011, through September 3, 201[1]." The trial court granted its motion, and refused Ms. Sauto's request for a continuance. A jury found her guilty of the offense, and the court sentenced her to one year imprisonment. Ms. Sauto moved for a new trial, but the court denied her motion. She has appealed her conviction and the denial of her motion for new trial, assigning nine errors.

II.

ASSIGNMENT OF ERROR I

DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED THE PROSECUTOR, ON THE EVE OF TRIAL, TO AMEND THE DATE OF THE OFFENSE IN THE INDICTMENT.

{¶10} Ms. Sauto argues that it was improper for the trial court to allow the State to amend the indictment only a few days before trial. According to her, by changing the date of the alleged offense from August 1, 2011, to a 19-day time period that did not even include the initial date, the court prejudiced her ability to defend her case. We review a trial court's decision to allow the amendment of an indictment for an abuse of discretion. *State v. Dudukovich*, 9th Dist. No. 05CA008729, 2006-Ohio-1309, ¶ 16.

{¶11} Under Criminal Rule 7(D), "[t]he court may at any time before, during, or after a trial amend the indictment . . . in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." The rule "embodies the protections guaranteed by Section 10, Article I, of the Ohio Constitution, which[ ] guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict

the accused on a charge essentially different from that found by the grand jury. An amendment that changes the name or identity of the offense charged constitutes reversible error, regardless of whether the defendant can show prejudice." *State v. Guenther*, 9th Dist. No. 05CA008663, 2006-Ohio-767, ¶ 50, quoting *State v. Honeycutt*, 2d Dist. No. 19004, 2002-Ohio-3490.

{¶12} "It has been widely held in Ohio that an indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses." *State v. Ritchie*, 9th Dist. No. 95CA006211, 1997 WL 164323, *2 (Apr. 2 1997). "In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period." *Id*. "Moreover, precise times and dates are not ordinarily essential elements of an offense, and do not necessarily need to be included in an indictment." *Id*.

{¶13} In this case, the State initially estimated the date of the offense as "on or about the 1st day of August, 2011," based on the information it had received from J.C. J.C., however, was inconsistent when speaking to law enforcement officers about what had happened between he and Ms. Sauto. The first time he spoke to police, he said that he had sex with her. When he met with an officer again, however, he denied that it happened. Nevertheless, before trial, the State was able to determine that the alleged sexual conduct occurred at some point between when J.C. and Ms. Sauto returned from West Virginia on August 14, 2011, and when they were "caught" on September 3, 2011. Accordingly, it moved to amend the indictment to reflect the more accurate time period. *See State v. Spencer*, 9th Dist. No. 94CA005859, 1995 WL 312704, *3 (May 24, 1995) (noting that "[t]he State has estimated the time frame relevant to each [child sex abuse] count . . . based upon the information it had prior to trial.").

{¶14} Upon review of the record, we conclude that the trial court did not err when it allowed the State to amend the dates of the indictment. The amendment did not change the

substance of the indictment, including any of the essential elements of the crime charged. In addition, because the original amendment did not specify a particular date, but merely indicated that the offense had occurred "on or about" August 1, 2011, we conclude that the amendment of the indictment from a single date to a 19-day period did not, in itself, violate Ms. Sauto's rights. *See Guenther* at ¶ 53 (explaining that, because the indictment indicated that offense occurred "on or about" a certain time period, "appellant could reasonably anticipate that he would have to defend beyond the strict parameters of [the identified dates]."). Ms. Sauto's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO GRANT A CONTINUANCE AND OVERRULED DEFENDANT'S MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL.

{¶15} Ms. Sauto next argues that the court should have granted her motion for new trial. Although she raised several issues in her motion, she notes that the most significant one was whether the court should have continued the trial after it granted the State's motion to amend the indictment. She argues that the court should have continued the trial so that she could prepare an adequate defense. She also argues that the court should have continued the trial because she received a list of new witnesses only five days before the trial, which left her lawyer with insufficient time to investigate each of those witnesses.

{¶16} "This Court's standard of review for a new trial motion depends on whether the motion required an exercise of discretion by the trial court." *State v. Rucker*, 9th Dist. No. 25081, 2010-Ohio-3005, ¶ 37. "If the motion for new trial required the lower court to exercise its discretion, this Court's review of the order granting or denying that motion is limited to determining whether it abused its discretion." *Id.*, quoting *Cooper v. Nadeau*, 9th Dist. No.

09CA0032, 2010-Ohio-2150, ¶ 7. "If the grant or denial of a new trial required resolution of a legal question, this Court's review is de novo." *Id*.

{¶17} "The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of 'any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *In re C.G.*, 9th Dist. No. 26506, 2012-Ohio-5999, ¶ 8, quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "[A] court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Unger* at 67-68.

{¶18} The State filed its request to amend the indictment the Thursday afternoon prior to a Monday trial, and Ms. Sauto replied in opposition the next day. On the first day of trial the following Monday, the trial court allowed the State to amend the indictment and denied Ms. Sauto's request for a continuance. In deciding against a continuance, the trial court noted that, because it had other duties to attend to on Tuesday, the trial would not proceed that day, giving Ms. Sauto a brief continuance to consider the amended indictment.

{¶19} Ms. Sauto argues that, if the trial had been continued further, she could have found an email that she sent on August 19, 2011, at 11:08 p.m., which is approximately when J.C. said they were having sex. She attached a copy of the email to her motion for new trial. According to Ms. Sauto, she sent the email from the computer at her house, which is a 45-50 minute drive from the studio. She asserts that she could not have rehearsed with J.C. until

approximately 11:00 p.m., engaged in sexual conduct with him, driven him and herself home, and sent the email all by 11:08 p.m. She, therefore, contends that, if she had been granted a short continuance, she could have demonstrated the impossibility of J.C.'s story to the jury. She also asserts that she was not able to locate the email between when the State moved to amend the indictment and when she had to present her defense because the police had seized her computer and had not returned it to her.

{¶20} The State argues that the alleged email has not been authenticated by anyone. It also argues that Ms. Sauto has the type of email account that can be accessed from any computer, even a cellphone, so just because she sent an email at 11:08 p.m., it does not mean she was at home. It also notes that, at trial, Ms. Sauto was able to produce two emails that she sent on August 19 and that she said that she had retrieved the emails from her computer. Accordingly, it argues that her claim that she could not access her computer before trial is false. When asked at trial how she had found the emails, Ms. Sauto answered: "I went on my computer and under my sent file I scrolled all the way down and saw August 19th, clicked on it and printed it out." Regarding the witness list, the State contends that, although it provided Ms. Sauto with a revised list five days before trial, the only new name that was on the list was the name of J.C.'s duet partner and that it notified Ms. Sauto that the duet partner might be a witness at the final pretrial, which was three weeks before trial.

{¶21} The record reflects that Ms. Sauto made very limited arguments regarding her request for a continuance in her motion for a new trial. Furthermore, based on the proceedings as a whole, it appears that Ms. Sauto was aware of the timeframe of the offense the State intended to pursue at trial. We also agree with the State that, even if she sent an email on August 19, 2011, at 11:08 p.m., the fact is reconcilable with J.C.'s testimony. In addition, Ms. Sauto has

failed to establish that she could not have located the email before she testified, given her production at trial of two other emails that she sent from the same account on the same day. Accordingly, based on her limited arguments and the fact that she did not provide the trial court with information suggesting prejudice, we conclude that Ms. Sauto's assertion that the trial court committed reversible error when it denied her motion for a continuance is without merit. The trial court correctly denied her motion for new trial. Ms. Sauto's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL
WHEN THE COURT REFUSED TO GRANT A MISTRIAL.

**{¶22}** Ms. Sauto next argues that the trial court should have granted a mistrial after it came to light that the prosecutor had notice before trial that the exact date of the offense was August 19, 2011. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for a mistrial is whether the substantial rights of the accused are adversely affected." *State v. Wooden*, 9th Dist. No. 21138, 2003-Ohio-1917, ¶ 33, quoting *Wadsworth v. Damberger*, 9th Dist. No. 3024–M, 2000 WL 1226620, *2 (Aug. 30, 2000). "Due to the variety of circumstances in which mistrial may emerge, great deference must be given by a reviewing court to the trial court's discretion as the trial court judge is in the best position to assess the situation and determine whether a mistrial is appropriate." *Wooden* at ¶ 33. "A trial court's ruling on a motion for mistrial will be reversed only for an abuse of discretion." *Id.*

**{¶23}** Ms. Sauto moved for a mistrial after J.C. testified that the sexual conduct occurred on August 19 and that he had spoken with the prosecutor before testifying. Ms. Sauto argued that the prosecutor, therefore, was well aware that J.C. was going to testify to a specific date and

deliberately obfuscated it by amending the indictment to a 19-day period. She further argued that the dance studio had not been cooperative in producing her employment records so that she could show that she was not at the studio on August 19.

{¶24} In her appellate brief, Ms. Sauto argues that, if she had known earlier that J.C. had alleged that the sexual conduct occurred on August 19, she could have introduced the email that she sent from her home computer at 11:08 p.m. that evening. In support of her assertion that the State deliberately obfuscated the date of the alleged crime, she notes that the law enforcement officer who interviewed J.C. testified that he learned that the alleged sexual act occurred on August 19 "[t]hrough my talking with the prosecutors" eight days before trial. She also notes that, in *State v. Covic*, 9th Dist. No. 11CA0055-M, 2012-Ohio-3633, this Court recognized that, "[a]lthough a specific date and time is ordinarily not required in a bill of particulars, if the State possesses such information, it must supply it in a bill of particulars or in response to a discovery request." *Id*. at ¶ 28.

{¶25} *Covic* does not apply to this case because Ms. Sauto did not request a bill of particulars under Criminal Rule 7(E). In addition, as we explained earlier, the fact that she sent an email around the time of the alleged sexual conduct is reconcilable with J.C.'s testimony. Furthermore, at the time that the trial court considered the motion for mistrial, the law enforcement officer who said that he knew that August 19 was the possible date of the sexual conduct eight days before trial had not yet testified. The court, therefore, could not have considered that information in making its ruling. Ms. Sauto did not renew her motion for mistrial after the officer testified.

**{¶26}** Upon review of the record, we conclude that the trial court exercised proper discretion when it denied Ms. Sauto's motion for mistrial based on the information it had at the time it considered the motion. Ms. Sauto's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT ALLOWED HEARSAY TESTIMONY CONCERNING WHAT OTHERS HAD TOLD WITNESSES.

**{¶27}** Ms. Sauto next argues that the trial court incorrectly allowed a law enforcement officer to testify about what J.C. had told him during an interview. She also argues that the court incorrectly allowed her mother-in-law to testify about things that her husband had said to the mother-in-law. According to Ms. Sauto, in both situations the testimony was inadmissible hearsay that deprived her of the right to confrontation and cross-examination.

**{¶28}** Regarding the officer's testimony about what J.C. told him, the officer testified that, when he asked J.C. if he had had sex with Ms. Sauto, J.C. stated "yes" and when he asked where, J.C. said "[i]n her car." Under Evidence Rule 801(D)(1)(b), a statement is not hearsay if the declarant of the statement testifies at trial and is subject to cross-examination regarding the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge of recent fabrication. "What the rule permits is the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story * * *." *State v. Allen*, 9th Dist. No. 94CA005944, 1996 WL 48550, *3 (Feb. 7, 1996), quoting *Motorists Mut. Ins. Co. v. Vance*, 21 Ohio App.3d 205, 207 (10th Dist.1985).

**{¶29}** On cross-examination Ms. Sauto's lawyer asked J.C. about the inconsistent statements he had made about his level of intimacy with Ms. Sauto. Accordingly, the testimony of the officer, who testified after J.C., was admissible to show that J.C. had recounted a version

of the facts that was consistent with his trial testimony only a couple weeks after the alleged conduct and before he started claiming that he had not had sex with Ms. Sauto. Because Ms. Sauto had an opportunity to confront and cross-examine J.C., her Confrontation Clause claim also fails. Regarding Ms. Sauto's mother-in-law's testimony, we have reviewed the trial transcript and have been unable to find any instance in which she recounted something that her son had told her. She merely testified that he brought a stack of letters to her, that she read the letters, and that her son later took the letters to the prosecutor's office. Ms. Sauto's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED UNDELIVERED LETTERS BE ADMITTED INTO EVIDENCE.

{¶30} Ms. Sauto next argues that the trial court incorrectly admitted a letter that she attempted to deliver to J.C., letters that she had written but did not intend to give to J.C., and text messages that she had sent J.C. on her cellphone. According to Ms. Sauto, because none of the letters indicated that she had had sexual activity with J.C., they were not relevant and, therefore, inadmissible.

{¶31} Under Evidence Rule 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Regarding the message that Ms. Sauto attempted to have the duet partner pass to J.C. after their relationship was discovered, it contained instructions to J.C. not to "Confess" and "Don't Say One Word 2 Them." That information was relevant to show why J.C. may have changed his story to the law enforcement officer. Ms. Sauto also referred in the letter to "that last Friday nite b4 I took u home. My heart was so overwhelmed + bursting with love I whispered 'I love you.'" That statement was

consistent with J.C.'s testimony that their sexual encounter occurred on a Friday night while he was in a car with Ms. Sauto before she drove him home. She also wrote in the letter that "I need a movie snuggle nite SO BAD! . . . I miss u like crazy. I ♥ U Madly. I wanna run my fingers thru ur hair. I want to hold ur hand + feel ur caress. I wanna kiss u slowly + softly. I miss all of this. I miss all of U." "I love [J.C.] my best friend, my tap partner, my lover, my soulmate, my everything." Those statements suggest that their relationship progressed beyond mere kissing.

{¶32} Regarding the messages that Ms. Sauto's husband found at their home, in them Ms. Sauto detailed how her feelings for J.C. had deepened the more time they spent together on out-of-state trips. She again referred to J.C. as her "lover" and made reference to "[w]hen we were in the car the last Friday . . . ." She further described "the most perfect dream" she had had that involved "Me + You, my place, lights off, candles lit, Michael Bublé in the air, and slow dancing. Soft kisses. Holding each other. lol . . . . oh + wine ☺" giving credence to J.C.'s testimony that he had consumed wine in the past while he was with her.

{¶33} With respect to the text messages Ms. Sauto sent to J.C., one of the messages referred to a movie in which a character was told that he was only going to be able to have sex with one woman for the rest of his life. Ms. Sauto noted in the message that she was conflicted about that idea and that she was not sure if it would be fair if J.C. did not get to experience the same things other people do. She then laughed about the fact that she was trying to convince J.C. to have sex with other girls. In another message she indicated that one of her children would "be singing… I saw mommy kissing santa claus… I mean [J.C.]" In another message she asked J.C. why she is the only woman that he wants to "get giggy wit" even though she's older and not in as good of shape as the girls his own age. These messages further indicate that Ms. Sauto's and J.C. relationship involved more physical conduct than Ms. Sauto admitted.

**{¶34}** Ms. Sauto has not demonstrated that the letters and text messages that the trial court admitted were not relevant. Her fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO INSTRUCT THE JURY TO CONFORM TO THE EVIDENCE.

**{¶35}** Ms. Sauto next argues that, instead of instructing the jury based on the dates stated in the indictment, it should have changed the date to only August 19, 2011, because that was the only date on which J.C. said the sexual conduct occurred. Ms. Sauto, however, did not object to the instruction at trial and she has not described how she was prejudiced by the instruction. *State v. McCallum*, 9th Dist. No. 08CA0037-M, 2009-Ohio-1424, ¶ 19 ("A defendant forfeits appellate review of an alleged error at trial if she fails to contemporaneously object to that error at trial."). Her sixth assignment of error is overruled.

ASSIGNMENT OF ERROR VII

DEFENDANT WAS DENIED DUE PROCESS OF LAW BY REASON OF IMPROPER PROSECUTORIAL ARGUMENT.

**{¶36}** Ms. Sauto next argues that the prosecutor made improper statements during closing argument. She notes that he said that "[w]e showed you beyond a reasonable doubt that the defendant is guilty of the offense that is charged." He also claimed that Ms. Sauto was a "Master manipulator. Manipulated everything. Manipulated [J.C.]," her husband and J.C.'s parents. He also claimed that, even if Ms. Sauto was found guilty, it did not automatically mean that she would lose her liberty. He further claimed that J.C. "was being honest with you. He is not scared anymore. He's telling you the truth."

**{¶37}** In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the

defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. No. 03CA008239, 2004-Ohio-1227, ¶ 6. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶38} Regarding the prosecutor's "we showed you" statement, the Ohio Supreme Court has explained that "both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). The prosecutor's statement was based on the evidence presented, not personal opinion and, therefore, was proper. Regarding his "manipulator" statements, the Supreme Court has explained that, if a defendant's credibility was central to her defense, a prosecutor may attack her credibility during closing argument so long as his characterizations are supported by the evidence. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 99. Ms. Sauto's letters demonstrate that she tried to convince J.C. not to tell law enforcement about their relationship, telling him that he could avoid legal trouble and ensure his future as a dancer if he did not say anything. She also convinced J.C.'s parents to allow him to go alone to Canada with her, even though her letters demonstrate that she had already begun developing feelings for him before the trip. Accordingly, we conclude that the prosecutor's characterization was proper. *See State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 117 (concluding prosecutor could make fair comment about defendant's credibility after defendant testified in his own defense).

{¶39} Regarding the prosecutor's "liberty" statement, the State notes that the prosecutor made the statement after Ms. Sauto's lawyers asserted in their closing argument that the jurors were being asked to deprive Ms. Sauto "of her liberty." The prosecutor's statement merely clarified that it was the judge, not the jurors who would decide whether Ms. Sauto would, in fact, lose her liberty following a guilty verdict, which is consistent with Ohio law. R.C. 2907.04; 2929.19.

{¶40} The State concedes that the prosecutor's "being honest" and "telling the truth" statements were "better left unsaid." That is because "[p]rosecutors . . . may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). It argues, however, that Ms. Sauto was not prejudiced by the statement because the evidence against her was overwhelming. We agree that the prosecutor's isolated comments about J.C.'s credibility did not deprive Ms. Sauto of a fair trial. *See State v. Carter*, 89 Ohio St.3d 593, 603 (2000) (concluding that prosecutor's bolstering of doctor's testimony did not deny defendant of a fair trial). Ms. Sauto's seventh assignment of error is overruled.

### ASSIGNMENT OF ERROR VIII

DEFENDANT WAS ENTITLED TO A NEW TRIAL AS THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR IX

DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL.

{¶41} Finally, in her eighth and ninth assignments of error, Ms. Sauto argues that the trial court incorrectly denied her motion for judgment of acquittal because her conviction was not supported by sufficient evidence and that her conviction was against the manifest weight of the

evidence. Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against her "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Ms. Sauto's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). In reviewing manifest weight, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶42} The Grand Jury indicted Ms. Sauto for unlawful sexual conduct of a minor under Revised Code Section 2907.04(A). That section provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A).

{¶43} Ms. Sauto argues that there was insufficient evidence to convict her because J.C.'s testimony was uncorroborated and he told different stories at different times to the police. She notes that her car was never examined for evidence of the alleged sexual encounter, meaning that there was no credible evidence that it occurred.

{¶44} Ms. Sauto's sufficiency argument is misguided because, in reviewing the sufficiency of the evidence, we must consider the evidence in a light most favorable to the

prosecution. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). J.C. testified that, when he was 15 years old, Ms. Sauto engaged in oral and vaginal sexual conduct with him. The State also presented evidence that Ms. Sauto was over 18 years old at the time and that she knew J.C.'s age. Viewing the evidence in a light most favorable to the State, we conclude that there was sufficient evidence to support her conviction. The trial court, therefore, correctly denied her motion for judgment of acquittal.

**{¶45}** Regarding the weight of the evidence, Ms. Sauto argues that J.C.'s testimony was not credible because he told different stories to the police and because there was no physical evidence to corroborate it. She also argues that this Court should consider the fact that she was prevented from introducing the email that she sent from her home computer at the time J.C. said that they were engaging in sex in her car.

**{¶46}** The letters that several witnesses identified as being in Ms. Sauto's handwriting confess that J.C. was Ms. Sauto's "lover" and that they had engaged in amorous activity on a recent Friday evening before she drove J.C. home. Those details are consistent with J.C.'s testimony and not consistent with Ms. Sauto's testimony, which was that she did not see J.C. at all on Friday, August 19, 2011. Ms. Sauto did not offer any explanation for her statements in two different letters in which she referred to "that last Friday nite b4 I took u home" and "[w]hen we were in the car the last Friday." Furthermore, even if we were to consider the email that she allegedly sent at 11:08 p.m. that evening, we note Ms. Sauto admitted that she could send emails from her cellphone. She, therefore, could have sent the email from the studio before they left or even while they were in her car.

**{¶47}** Upon review of the record, we conclude that the jury did not lose its way when it found that Ms. Sauto engaged in sexual conduct with J.C. Ms. Sauto's eighth and ninth assignments of error are overruled.

### III.

**{¶48}** The trial court did not deny Ms. Sauto due process or the right to a fair trial and her conviction was supported by sufficient evidence and not against the manifest weight of the evidence. Appellant's assignments are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶49} I concur in the judgment. The amendment in this case did not change the name or identity of the crime charged, only when it had allegedly occurred. However, an amendment to an indictment may not infringe upon a defendant's due process rights and, for this reason, Crim.R. 7(D) provides that,

> [i]f any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled * * * to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.

In other words, if the amendment substantively alters the indictment, the defendant is entitled to a continuance unless it clearly appears that there is no prejudice. The consideration of prejudice is based on the whole proceedings, which would include discovery and other interactions of the defense with the prosecution.

{¶50} The record reflects that Mrs. Sauto made very limited arguments in opposition to the amendment to the indictment. Furthermore, based on the proceedings as a whole, it appears that Mrs. Sauto was aware of the timeframe of the offense the State intended to pursue at trial. Accordingly, based on her limited arguments and the fact that Mrs. Sauto did not provide the trial court with information suggesting prejudice, Mrs. Sauto's assertion that the trial court committed reversible error regarding the amendment to the indictment is without merit.

**{¶51}** Nevertheless, I wish to note that the State appears to have been operating under the assumption that, because the victim in this case was a minor, it could amend the indictment at any time without any repercussions. However, as noted above, an amendment to an indictment cannot violate a defendant's due process rights irrespective of a victim's age. While there certainly are cases discussing the difficulty of prosecuting an offense involving a child, by and large those cases involve *young* children. *See, e.g., State v. Ritchie*, 9th Dist. No. 95CA006211, 1997 WL 164323, *1 (Apr. 2, 1997) (Victim was five-years-old when abuse began.); *State v. Spencer*, 9th Dist. No. 94CA005859, 1995 WL 312704, *1 (May 24, 1995) (Victim was seven or eight-years-old when abuse began.). Typically, in such cases the State is never able to provide more than a general time frame as to the commission of the offense. By contrast, the victim in this case was 15-years-old, whom one would presume is much more capable of identifying precise dates and times than a 5-year-old. It is important to recognize this difference when considering the appropriateness of amending an indictment. While the amendment was permissible under these facts, it may not be in another regardless of the victim's status as a minor.

APPEARANCES:

EDWARD M. MULLIN, Attorney at Law, for Appellant.

PAUL MANCINO, JR., Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.